E. G. KEMPER, Appellant, *v.* MARY C. KING, Respondent.

November 15, 1881.

1. An order substituting one party for another will not be made by an appellate court upon a mere suggestion.

2. In a suit to establish a lien, an appellate court will not, upon the suggestion that the land sought to be charged has been sold, order the purchaser brought in and made a party.

3. A municipal corporation may make a new contract for the completion of street improvements, if a former contract to make the improvements has been abandoned.

4. In assessing the cost of the work done under the new contract, the city en-

gineer need not take into consideration work done under the abandoned contract.

5. The ordinance under which the first contract was made furnishes authority for making the new contract to complete the improvements begun under the first.

6. In estimating the cost of street improvements, the city engineer should not include a small, fragmentary, outlying piece of work, but should make it the basis of a separate estimate and assessment.

7. The charter of the city of St. Charles authorizes the repairing and construction of sidewalks, for one or more blocks, wherever the centre of the street has been macadamized, at the cost of the abutting property-holders.

8. The cost of street improvements which are a charge upon abutting property must be assessed against each lot separately.

9. Where the owner of two contiguous lots erects his residence upon the dividing line and encloses them as one, they may be considered as one in the assessment for street improvements.

APPEAL from the St. Charles Circuit Court, EDWARDS, J. *Reversed and remanded.*

H. C. LACKLAND, for the appellant : That a contract for street improvement embraces disconnected streets or parts of streets, will not prevent a recovery on a special tax-bill issued therefor. — *Neenan* v. *Smith,* 60 Mo. 292. The process by which the city engineer reached the amount of the assessment of the cost need not appear upon the tax-bill. — *Haegle* v. *Mallinkrodt,* 3 Mo. App. 329 ; *Cramer* v. *Allen,* 3 Mo. App. 545.

T. F. MCDEARMON and A. KING, for the respondent : The contract was not in conformity with the ordinance, and the apportionment was not of the whole cost of the work. — *Eyerman* v. *Hardy,* 8 Mo. App. 311 ; *Miller* v. *Anheuser,* 4 Mo. App. 436 ; *Kefferstein* v. *Holliday,* 3 Mo. App. 569. The street upon which the sidewalks were laid was not macadamized along the centre for the entire distance embraced in the ordinance. — *Perkinson* v. *Partridge,* 3 Mo. App. 580 ; *Kinealy* v. *Gay,* Mo. App. ——; *The State ex rel.* v. *Barlow,* 48 Mo. 17 ; *St. Louis to use* v. *Clemens,* 43 Mo. 395 ; *Ruggles* v. *Collier,* 43 Mo. 353 ; *Anderson* v. *St. Louis,* 47 Mo 477 ; *Sexton* v. *St. Louis,* 60 Mo. 153.

Thompson, J., delivered the opinion of the court.

At the last term, the death of the respondent, defendant below, Frank C. King, was suggested, and we awarded a citation to bring in Mary C. King, who, it was suggested, was his sole heir at law. The citation was issued, served in compliance with the statute, and Mary C. King appeared by her guardian, and moved to dismiss the cause as to her, on the ground that, since the death of F. C. King, her father, all the right, title and interest of the said F. C. King in and to the land against which it is here sought to establish a lien for special taxes, has passed by a sale under a deed of trust, to the Covenant Mutual Life Insurance Company. We overruled this motion, on the ground that one party cannot be substituted for another in such a case as this, upon a mere suggestion ; that there must be proof, or an admission by the adverse party, of the facts claimed, to make it proper to substitute the new party. We also overruled at the last term a motion of the plaintiff to bring in the Covenant Mutual Life Insurance Company, and to substitute it as the party defendant. It is obvious that, in a proceeding the only object of which is to establish a lien upon real estate, the course of justice ought not to be delayed by bringing in new parties, whenever it shall be suggested that there has been a transfer of the land in question. No hardship in this case will accrue to Mary C. King, by reviving the suit against her as sole heir at law of the party who was the original defendant, since there can be no personal judgment against her, she not being the personal representative of F. C. King ; but the whole judgment, including the judgment for costs, will necessarily run against the land only. As to the rights of the Covenant Mutual Insurance Company, it has purchased, if at all, with notice of a *lis pendens*, and if it had desired to do so, it might have come in and made itself a party by its own voluntary act.

Upon the merits, this case is a suit brought by E. G.

Kemper, who did certain curbing, guttering, and sidewalking in front of a lot of ground in the city of St. Charles, belonging at the time to F. C. King, deceased, upon the special tax-bill issued to him therefor by the city engineer of said city, to establish a lien therefor against the property. The cause was tried in the circuit court without a jury, and judgment was given for the defendant.

By the charter of the city of St. Charles it is provided : " The mayor and city council shall have power to cause the construction and repairs of all sidewalks, crosswalks, and alleys within the city, at such time and such extent, and of such dimensions and material, and in such manner and under such general regulations, as shall be provided by ordinance." Acts of 1869, chap. —, sect. 10.

" The cost of paving, guttering, and curbing of sidewalks, and the cost of all reconstructions, and also the cost of grading and paving all alleys within the city, shall, in all cases, be paid by the owners of the property in the vicinity of the work, in such manner as shall hereinafter be provided, and as may be further provided by ordinance ; provided, that sidewalks may be ordered and paved only when the streets to where such sidewalks may be located shall be first paved or macadamized in the centre thereof." *Ibid.*, sect. 11.

" Whenever any of the above-mentioned work shall have been fully completed under authority of ordinance, the city engineer, or other officer having charge of the work, shall compute the cost thereof, and assess it as a special tax against the adjoining property fronting upon the work done, in proportion to their respective fronts ; he shall deliver a properly certified copy of said assessment to the city register, who shall then make out a certified bill of such assessment against the lot of ground chargeable with the work done, in the name of the owner thereof, and shall be required to keep a record of such bill or account in a properly bound book in his office, and such book shall be subject to the inspection of any citizen, and he shall, on the presentation of

the receipted bill, be required to enter satisfaction on the margin of his record of said bill; said certified bill shall be delivered to the contractor for the work, who shall proceed to collect the same by ordinary process of law, in his or her name; and in case the owner be a non-resident of the state, suit may be brought by attachment, or by any other process known to the law; and such certified bill shall be a lien against the lot of ground described therein, and shall bear interest at the rate of ten per cent per annum for thirty days after its issue to the contractor, unless sooner offered to be paid; and if not paid, nor offered to be paid, within six months after its issue, it shall bear interest from its issue until paid, at the rate of fifteen per centum per annum; and every such certified bill shall, in any action brought to recover the amount thereof, be *prima facie* evidence that the work and materials charged in such bill have been furnished, and of the liability of the person therein named as the owner of such property. Justices of the peace shall have the power to render a special judgment, and the same may be enforced as in the case of delinquent taxes; provided, that nothing in this section contained shall be so construed as to prevent the party charged with the payment of such bill from pleading in reduction of the amount of the same, that the work therein mentioned was not done in a good and workmanlike manner; and provided further, that if the party charged shall set up, by way of defence, that the work was not done in a workmanlike manner, and that such party, before the commencement of the suit, tender to the contractor the full value of such work as done, and shall establish the same on the trial, the recovery shall only be for the amount so tendered, and judgment for the costs shall be rendered against the plaintiff. The city shall not be liable in any manner whatever for, or on account of, any work done, and which is to be paid for in the manner provided by this section." *Ibid.* sect. 12.

On June 18, 1870, the following ordinance was passed by

the city council of the city of St. Charles, and approved by the mayor : —

" Section 1. The city engineer is hereby authorized and empowered, whenever thereto requested and ordered by the city council, to construct guttering and curbing, alter, widen, extend, establish, grade, pave, or otherwise improve, clean, and keep in repair all sidewalks, alleys, avenues, lanes, drains, and sewers within the corporate limits of the city ; *provided, however*, that said work, of whatever description, shall be performed in the manner and according to the specifications already or hereafter to be provided by ordinance.

" Section 2. The city engineer is further authorized and empowered, upon the order or request of the city council, without further provision by ordinance or otherwise, to do any of the work mentioned in the preceding section, conforming in the manner of executing said work to the laws already provided, and that may hereafter be provided for that purpose, allowing to the city engineer discretion in the minute and scientific details in the execution of said work."

On October 7, 1871, the following special ordinance was likewise passed and approved : " Section 1. The city engineer is hereby authorized and ordered *to construct or cause to be constructed*, in the manner provided by law and ordinance, sidewalks ten feet wide, and curbing and guttering on both sides of Clark Street from Main Street to the western limits of the city.

" Section 2. This ordinance shall take effect and be in force from and after its passage."

On June 6, 1876, it was ordered by the city council, that the engineer advertise for sealed proposals for constructing, curbing, guttering and sidewalks on Clark Street between Third and Fourth Streets on the south side, and between Five-and-a-half and Sixth Streets on the north side ; and the engineer was also ordered to notify the property-holders

on the north and south sides of Clark Street between Main and Second Streets, and on the north side between Five-and-a-half and Sixth Streets, to proceed without delay to construct curbing, guttering, and sidewalks.

On February 11, 1876, a contract was entered into between the plaintiff and the city of St. Charles, by which the plaintiff undertook, in accordance with annexed specificatioes, "to curb, gutter and pave the sidewalk for the north side of Clark Street from Five-and-a-half to Sixth Streets, and pave brick sidewalk on the south side of Clark in front of Mrs. A. Huffschmidt's lot between Third and Fourth Streets." This contract was executed by the plaintiff for himself, and by J. Zeisler, mayor, for the city, and the usual bond was executed.

The work thus contracted to be done was done by the plaintiff; and the evidence contains no suggestion that it was not properly done and in pursuance of the specifications.

Clark Street was macadamized in the centre thereof from Main Street as far west as Sixth Street, and consequently in front of the lots embraced in both of these pieces of work.

When the plaintiff had finished the work, the city engineer proceeded to make out special tax-bills therefor, as it was his duty to do. In measuring the work, he summed up the whole value of the work done by the plaintiff, and then struck a proportion according to the number of feet the respective parties owned. He measured the whole block, and assessed to each of the parties the number of feet owned by them, and charged the contract price on the number of feet owned by each party. The property on the north side of Clark Street between Five-and-a-half and Sixth Streets consisted of Mrs. King's lot, the tax-bill issued against which was disposed of in case No. 1980 of this court; and the lot of Mr. King, with which we have now to do. In making out the tax-bill, the city engineer measured this block and assessed the price

of the work against the respective properties of Mr. King and Mrs. King, at the contract price of $1.99 per foot. In measuring their properties for the purpose of assessing the cost of the work, he did not take into consideration the work done in front of Mrs. Huffschmidt's lot, which was about three blocks distant, and which consisted simply in laying a few brick in the pavement; the curbing and guttering, having been done under a former contract. According to the plaintiff's testimony, he did not lay the pavement in front of Mrs. Huffschmidt's lot. She let out the work to private contractors.

For the cost of the work thus measured and assessed against the lot of F. C. King, a special tax-bill was made out by the city engineer and furnished to the plaintiff. The tax not having been paid by Mr. King, the plaintiff brings this suit upon it to charge the amount thus due him, with the statutory penalties, against the property.

By the charter of the city of St. Charles, already set out, every such certified bill shall, in any action brought to recover the amount thereof, be *prima facie* evidence that the work and materials charged in such bill have been furnished, and of the liability of the person therein named as the owner of such property." Acts of 1869, pp. 152, 153.

This was the plaintiff's case; and on its face it certainly appears to have been a good case, so much so as to excite curiosity as to the grounds on which it was decided against him. This will in part appear from some additional facts shown by the defendant.

In 1871, the city had made a contract with one Albers, for the construction of sidewalks, curbing, and guttering on Clark Street from Main to Sixth Streets, which, as already seen, embraced the work in front of the properties of Mr. and Mrs. King. Albers assigned the contract to one Tagliasachi, who did a good deal of work under it, and many tax-bills were issued therefor, some of which were paid and some not. Tagliasachi assigned the contract to

Balmelli & Bottani, and they did some work under it, for which tax-bills were issued, some of which were paid. But the contract was finally abandoned, leaving the work unfinished. No curbing, guttering, or sidewalking was ever done under it in front of the lots of Mr. and Mrs. King.

It was also shown that Clark Street had never been paved west of Sixth Street, and that no sidewalking, curbing and guttering had ever been done on that street west of Sixth Street, nor had any contract for such work ever been made.

Upon evidence of facts substantially as above set out, none of which were controverted, the learned judge of the circuit court was asked to give the following declarations of law for the plaintiff, all of which were refused : —

" 1. If the contract of Albers and Tagliasachi was abandoned in 1873 or 1874, the city had the right to make the contract with the plaintiff under which he did the work for which he sues, and it was proper in making out the tax-bills to consider the contract of plaintiff as a separate and distinct contract, having no connection with the work done under any former contract ; and if the property of Mrs. Huffscmidt was situated three or four squares distant from the work done in front of the Kings' property and was disconnected from it, it was not necessary to include the Huffschmidt property in the estimate for the purpose of making out the tax-bills.

" 2. Special ordinance No. 29 is not void because Clark Street was macadamized only as far as Sixth Street, but it was good and valid *pro tanto*, and would authorize the construction of curbing, sidewalks, etc., as far as the macadamizing extended, to wit, Sixth Street ; and the plaintiff's contract and the defendants' property being within that limit, said ordinance authorized the making of said contract.

" 3. The fact that the lot of the defendants is described in the deed in evidence as two lots, will not prevent a recovery in this case, if the evidence shows that the two were

used and considered as one lot, on which was situated the residence of the defendants."

And thereupon, at the request of the defendant, the learned judge gave the following instructions : —

" 1. The court declares the law to be that, ordinance No. 29, given in evidence by the defendants, fixes the extent of the work to be done on Clark Street, to be the construction of sidewalks, curbing and guttering on both sides of Clark Street from Main Street to the western city limits ; and the city engineer had no authority to make the contract with the plaintiff given in evidence, or any other contract except for the whole work provided for in said ordinance No. 29.

" 2. If the evidence shows that the tax-bill sued on was made out and issued upon an apportionment of the cost of the sidewalk, curbing and guttering along Clark Street, in front of defendants' lot or lots, between Five-and-a-half and Sixth Streets, and not upon an apportionment of the whole cost of such sidewalk, curbing, and guttering on Clark Street from Main Street to the western city limits, then the plaintiff cannot recover.

" 3. The court declares the law to be, that assessments of this nature must be made against each lot separately, even if the same person should be the owner of several contiguous lots ; and if the evidence shows that two lots of the defendants have been collectively assessed, the plaintiff cannot recover.

" 4. If the special tax-bills here sued on fail to show on their face the dimensions of the lot or lots charged, and especially its frontage, and are silent respecting the whole value of the work ordered by ordinance No. 29, and the relation of the frontage of the particular lot or lots to that of all the frontage of the lots charged with the whole cost, then there is not a compliance with the requirements of the charter, and the plaintiff cannot recover.

" 5. The court declares the law to be, that before assess-

ments can be made against the lots or ground adjacent to or fronting on any street in the city of St. Charles, Missouri, for the cost of constructing sidewalks, curbing, and guttering, the street to which the lots are adjacent and upon which said sidewalks, curbing, and guttering are constructed, should be macadamized or paved in the centre thereof; and an ordinance of said city, which requires such work to be done on and along any street which is not so macadamized or paved along the entire distance ordered in the ordinance, is without authority of law and null and void.''

We do not consider it necessary to enter into a discussion of these declarations in detail, but we will simply indicate the views at which we have arrived after a careful consideration of the subject.

1. We hold that where a municipal corporation has power to contract for the making of a particular street improvement, and to assess the cost thereof upon abutting property-holders, and where, in the exercise of this power, it lets out a contract for the doing of such work, and such contract is abandoned before the work required to be done under it is completed, it is competent for the city council, at such time thereafter as in its discretion seems best, to order the making of a new contract for the completion of the work. We hold further, that in assessing the cost of the work done under the new contract, the city engineer is not bound to equalize the cost of the work done under the abandoned contract with that done under the new contract. We also hold, that, in estimating the cost of the work done under the new contract, it is proper for the city engineer to measure together such continuous work as from its nature can be estimated together, at the price stipulated in the contract, and to apportion the work upon each of the holders of property in front of whose property such continuous work is done; and that he is not bound to take into consideration in making an estimate of such continuous

work, any outlying fragmentary piece of work, the cost of which, from its nature, cannot be equalized with the continuous work; nor is it proper for him to do so; but that, on the contrary, such outlying piece of work should form the basis of a separate estimate and assessment. It follows that the first declaration of law asked for by the plaintiff should have been given.

2. We hold that when a municipal corporation is clothed with a general power to improve its streets, it is a matter of discretion, judicial or legislative in its nature, for the city council to determine when, in what manner, and to what extent any street improvement shall be made; that in the exercise of this discretion the city council is not bound to contract for the improvement of an entire street in order to acquire the right to charge the cost of such improvement upon the abutting property-owners; but that they may, in their discretion, contract for the improvement of the street for any number of blocks, or for the length of a single block; and that this is a discretion which cannot be revised by the judicial courts, unless possibly in extreme cases, where there has been manifest abuse. If there were any doubt as to whether the mayor and council of St. Charles possess a power as extensive as thus indicated, it would be put at rest by the very language of section 10 of its charter, which declares that the mayor and city council shall have power to cause the construction and repairs of all sidewalks, crosswalks, and alleys within the city, at *such time and such extent, and of such dimensions and material, and in such manner and under such general regulations* as shall be provided by ordinance.''

3. We hold that it is immaterial for the purposes of this case, whether or not special ordinance No. 29 furnishes authority for the making of the contract under which the work here sued for was done; since abundant authority for the making of the contract is found in the ordinance of January 18, 1870, and in the order of the city council of

January 6, 1876, which was made in conformity thereto, and which, from the date, would appear to be the immediate authorization under which the contract here in question was made. The second declaration of law asked for by the plaintiff was, therefore, immaterial, and hence we cannot say that it was error to refuse it. It follows, also, that the first and second declarations of law given at the request of the defendant were erroneous. The fourth declaration of law given for the defendant is also framed on the theory that this contract was necessarily made under authority conferred by special ordinance No. 29, and is hence erroneous. The fifth declaration of law, as a general proposition, is undoubtedly correct; but it would not necessarily influence the judgment in favor of the defendant in this case, since, as we have already seen, Clark Street was paved in its centre as far west as Sixth Street, and as far west as any curbing, guttering, or sidewalking had ever been contracted for or done.

4. We hold, as we held in the case of this plaintiff against Mrs. King (No. 1980), that the cost of street improvements of this nature must be assessed against each lot separately, even if the same person should be the owner of several contiguous lots; and that if the evidence shows that several lots of the defendants have been collectively assessed, the plaintiff cannot recover. The third instruction given for the defendant therefore expresses the undoubted law. But we discover no evidence in this record that the property consisted of more than one lot. It was, therefore, an abstract instruction. We also hold that this rule does not apply where the owner of two contiguous lots has turned them into one and built his dwelling-house upon the dividing line between them, thereby rendering a separate sale of them inconvenient and impracticable; and if this shall appear upon another trial, it will be no defence to the suit.

We have examined the decisions of the supreme court,

and of this court, cited in the respondent's brief, and find nothing in them which conflicts with the views here expressed. The one which has been pressed upon us most strongly is the case of *Eyerman* v. *Hardy* (8 Mo. App. 311). As we understand the respondent's position, that case is supposed to be authority for the conclusion that the engineer of the city of St. Charles, in making out the tax-bills for the plaintiff under the present contract, was bound to equalize the cost of the work done under the Albers contract, with the cost of that done under the present contract. That case is not authority for such a position. There, the improvement of a street was let out contemporaneously to several different contractors, and this court held that the cost of the entire improvement, and not the cost of the work done under each separate contract, must be equalized and assessed ratably against the abutting property-holders. This was obviously just and proper, and entirely practicable ; but here, the two contracts were not contemporaneous. The Albers contract, so far as work had been done under it, was executed, and many of the tax-bills issued under it had been paid. How, then, was it practicable to equalize and assess ratably against all property-holders from Main to Sixth Streets, the work done under the two contracts ? It could no more be done, so far as we can see, than could the cost of the work done by the plaintiff between Five-and-a-half and Sixth Streets be equalized with the cost of laying the few bricks in the pavement in front of Mrs. Huffschmidt's lot.

Undoubtedly the power to charge private property with the cost of public improvements against the will of the owner, is a power which must be strictly pursued, and substantial deviations from the mode prescribed for its exercise will not be tolerated. But here, as elsewhere, courts of justice must take practical views of things. Public improvments must go on ; and if the courts of justice, in their anxiety to protect property-owners from a reckless or op-

pressive exercise of this power, hamper its exercise with
unreasonable or impracticable rules, it will result that munic-
ipal corporations will not be able to let out contracts for such
improvements, at a cost which fairly represents their value,
and that none will bid for such contracts except at prices
at which they can afford to assume the speculative chances
of unfriendly litigation.

The judgment is reversed and the case remanded.  Judge
BAKEWELL concurs ; Judge LEWIS is absent.