THE CITY OF HANNIBAL V. RICHARDS, *Appellant.*

1.  **Municipal Corporation**: NUISANCE, ABATEMENT OF. A city cannot create a nuisance upon the property of a citizen and compel him to abate it.

2.  ———: CHARTER: PLEADING: ISSUE. The charter of a city, authorizing it to fill a lot on default made by the owner, gives it a demand against him for the cost of filling the lot, if done by the city, and the averment of the cost of the work is one upon which an issue. may be made.

*Appeal from Hannibal Court of Common Pleas.*—HON. THEO-
DORE BRACE, Judge.

REVERSED.

*Thomas H. Bacon* for appellant.

The section of the charter authorizing this proceeding
must be strictly construed. Cooley on Tax., p. 209, note
1; Wood on Nuis., 770, § 738. And as the claim involved
under this section was created by a summary proceeding on
the part of respondent, the strictest proof will be required
to make out a cause of action. *Weimer v. Bunbury,* 30
Mich. 201; *Kansas v. Campbell,* 62 Mo. 585. Where the
alleged grievance is a requirement of the public health, the
grievance must amount to a public nuisance before the dele-
gated power, either of local assessment or of police regula-
tion can be applicable. There must be an injury to the
public health. Wood on Nuis., 771, § 739. There could
be no public necessity to fill or drain defendant's lots unless
in their condition they constituted a public nuisance. The
charter does not condition the municipal power on the
maintenance of a public nuisance, and so far the charter
is in violation of the constitution. The charter founds the
proposed cause of action absolutely on the mere opinion of
the city, and this is likewise beyond the legislative power.
*River, etc., v. Behr,* 77 Mo. 91, p. 98. The ordinance did
not allege a nuisance, neither did it allege that the public
health required the filling of the lots. The petition did
not allege a nuisance, neither did it allege that the public
health required the filling of the lots. There was no proof
of a nuisance, and no proof as to the requirements of the
public health. The court erred in excluding the plat of
the city showing the riparian character of appellant's lots.
The court erred in excluding appellant's title deed, as it
showed that he was owner of the lots at the time of the
city's wrongful obstruction of the channel, and that appel-

lant had done nothing to contribute to the condition complained of. The court erred in excluding appellant's evidence showing that whatever unhealthy conditions existed were wrongfully created by the city itself against and over the protest of appellant at the time. The court erred in excluding appellant's evidence, showing that the supposed unhealthy condition could have been removed by drainage at an expense of $75. *River, etc., v. Behr*, 77 Mo. 92. The general assembly did not undertake to make the city's mode conclusive. The city ordinance was subject to judicial review. *Corrigan v. Gage*, 68 Mo. 541. The court erred in excluding evidence to prove that the filling was only done ·on the rear end of the lots, and on an undescribed fraction thereof. The city could not charge any land but that which it filled, and the identity of the filled land was material. The court erred in excluding appellant's evidence as to the cost of filling. An allegation was that defendant was indebted. This was denied and was sufficient. *Westlake v. Moore*, 19 Mo. 556. The court erred in excluding appellant's evidence ·that the public health was not injured by said lots. *State v. Addington*, 77 Mo. 110 ; *River, etc., v. Behr*, 77 Mo. 91  The exclusion of all defendant's testimony subjects the case to review without a motion for new trial. *Coots v. Morgan*, 24 Mo. 522; The offers to prove have the same effect as if the proof had been made. 68 Mo. 544. The court erred in overruling the motion for new trial, and the motion in arrest wherein all above considerations were specially renewed. The court erred in excluding the evidence that the city itself created and wrongfully created the condition complained of. *Weeks v. Milwaukee*, 10 Wis. 258; Cooley on Const. Lim., 512 ; *Corrigan v. Gage*, 68 Mo. 541; *Cape Girardeau v. Riley*, 72 Mo. 220, p. 214, top; *St. Louis v. Richeson*, 76 Mo. 470, p. 484 ; *Barring v. Com.*, 2 Duvall (Ky.) 95.

*Easley, Eby & Russell* for respondent.

The ordinance of the city council made in pursuance

of Sess. Acts, 1873, p. 253, § 14, is conclusive of the question of whether the health of the city required the filling of the lots. The presumption is that whatever was done was rightfully done, and may be held as *prima facie* evidence, that the health of the city required the filling of the lots. *Salem v. Railway Co.*, 98 Mass. 457. A judicial determination that the lots in question were nuisances, and injurious to public health, was not required before the city could act in abating such nuisances and protecting the public health. The city charter expressly confides that power to the city, and it had exercised it in this case by declaring the lots in question nuisances, and ordering that they be filled up. Sess. Acts. 1873, pp. 242, 243, §§ 19, 20; p. 253, § 14; *Kiley v. City of Kansas*, 69 Mo. 109. The appellant had the right to show that the health of the city did not require the filling of the lots. *City of St. Louis v. Schnuckelberg*, 7 Mo. App. 536. This the appellant did not attempt to do. He only proposed to prove " that no person's health was ever injured by said condition of defendant's lot." If the action was by a private person for damages arising from the nuisance, special injury would have to be shown. Wood on Nuis., p. 655, § 618. But the whole machinery of the police power over matters affecting the health of communities is designed to prevent injury, and not to furnish redress for injuries sustained. Wood on Nuis., p. 72, § 70. The charter of the city gives both a general (Acts. 1873, p. 243, § 20) authority to cause nuisances to be abated at the expense of the owners of the ground; and a special authority over the filling up of lots when the health of the city requires it. This special provision, " in view of the end for which it is given is not subjected to a hostile or even a narrow construction." 1 Dillon Munic. Corp. (3d Ed.), p. 384, § 379; *Kiley v. City of Kansas*, 69 Mo. 107. Both the general and special provision are proper exercises of the police power of the state. Cooley's Const. Lim. (5th Ed.) 741. That no provision is made for compensation to the lot-owner, does not render the proceedings in-

valid.  1 Dillon Munic Corp. (3d Ed.) p. 166, § 141, note. The deed and plat offered in evidence were properly excluded.  There was no issue made as to the ownership of the property.  The court properly excluded the evidence proposed to be offered as to the value of the amount of work done.  The city had, in good faith, expended the amount sued for, and is entitled to recover it.  1 Dillon Munic. Corp. (2d Ed.) p. 213, § 96.  The allegation of the petition was that the " cost of filling " said lots were the amounts named.  This the answer did not deny.  The answer simply asserted that the appellant was not indebted, etc.  This was not a denial of the alleged cost of filling the lots.

HENRY, J.—This is an action by which plaintiff seeks to recover of defendant the cost and expense of filling two lots owned by him in the city of Hannibal.  The work was done by the city on the refusal of defendant to comply with an ordinance, ordering the owners of certain lots to fill them, the health of the city requiring it in the opinion of the city council, as expressed in the preamble to the ordinance.  By the city charter whenever, in the opinion of the city council, the health of the city requires it, said council is authorized to order any lot to be filled by the owner thereof.  The lots owned by defendant were lot No. 2 and the north third of lot No. 1 in block No. 14.  On a trial of the cause plaintiff had judgment from which defendant has appealed.

The evidence for plaintiff tended to prove the cause of action alleged in the petition, and defendant then offered to prove by witnesses present in court, that Bear Creek had been from time immemorial a natural running stream about fifteen miles in length, with a width as shown on the plat in evidence, with defined and actual banks, with a volume of water sufficient for navigable purposes for a short distance at certain seasons of the year.  That in 1849 and 1850 the plaintiff wrongfully cut a new channel across the

neck of the bend shown in said plat so as to run straight to the river, leaving out from said channel the part of Bear Creek on defendant's property, all wrongfully done by said plaintiff without warrant of law; that in 1859, subsequent to defendant's said purchase, the plaintiff constructed its embankment on Second street, as shown in said plat, said embankment being about fifteen feet high running across said bend of Bear Creek so as to cross said creek twice, cutting off defendant's lots and cutting off the channel of said creek therefrom, and damming the water on said lots of defendant without leaving any drain for the water to escape from that part of said creek on defendant's land, and that defendant protested to the city authorities at the time against said action; that after such embankment was made the defendant requested plaintiff to open a passage way for the drainage of said stream from his lots, but the plaintiff then and ever since has neglected to put in any such drain; that the part of said creek bed thus cut off was the drainage basin of a large adjacent area, thus wrongfully converted into a pond by said plaintiff without authority of law; that at the time the plaintiff passed its ordinance the said pond could have been drained by opening culverts through said old channel across said Second street at an expense not exceeding $75, and that the drainage of said old channel was thus entirely practicable at light expense, and would have been entirely effectual in relieving said lots, and that there never would have been any objection to defendant's lots as a nuisance but for the said action of the plaintiff; that whatever alleged nuisance was on said lots was created by the direct and wrongful action of the plaintiff only; that the work so done by defendant [plaintiff?] did not abate said alleged nuisance or improve the health of said city, but continued to leave said lots subject to overflow; that the filling up of said lots was entirely unnecessary and unadvisable, and was done contrary to the will of defendant; that at the time the said alleged ordinance was

passed, the said creek channel had become changed by a wash on the outer curve to the rear end of said lots.

Further, the defendant offered to prove by said witnesses that the work actually done on defendant's lots did not amount to more than nine hundred and fifty-four 82-100 cubic yards, and that the reasonable value of doing such work at this time was not over twenty-five cents per cubic yard; that the plaintiff's actual cost of the work at the time was not three-fourths of the amount charged in the petition, and that the city unnecessarily and wrongfully aggravated its cost of doing such work, that no person's health was ever injured by said condition of defendant's lot; that the alleged cost of filling said lots was greater than the value of the property so filled; that the fill made was not on the whole of the parcels described in the petition, but only on the rear end thereof and on the undescribed fraction thereof.

To the introduction of this evidence the court sustained plaintiff's objection and thereupon gave such instructions as authorized a verdict for plaintiff. Considering as proved, the facts which defendant offered to prove, the construction of the embankment on Second street by the city was subsequent to defendant's purchase of the lots and that embankment prevented the flow of the water from the lots and occasioned its accumulation upon them, which, it is alleged injuriously affected the health of the city. It has been repeatedly held by this court, that the owners of the lots under such circumstances could not maintain an action against the city for the damage to them but that such injury is *damnum absque injuria*. Now, we are asked to hold, also, that the city may create a nuisance upon the lot of an individual and then have it abated at his expense, if he refuse to do it when ordered. As well at once declare that no one can acquire any rights to town or city lots which the municipal corporation is bound to respect. The city cannot create a nuisance upon the property of a citizen and compel him to abate it. *Weeks v. City of Milwaukee*, 10

Wis. 269. The cost of filling the lots was the extent of defendant's liability, if any existed, and we see no reason why defendant should not have been permitted to show that it was less than plaintiff claimed. There is no law declaring municipal corporations infallible or that their demands are incontestible. The charter authorizing the city to fill a lot, on default made by the owner, gives her a demand against him for the cost of filling it, if done by the city, and the averment of the amount and cost of the work is one upon which an issue may be made. At a trifling expense at the time plaintiff passed the ordinance requiring these lots to be filled the pond could have been drained and but for the neglect of the plaintiff to make such drain the nuisance complained of would never have existed. The judgment is reversed and the cause remanded. All concur.