# CASES DETERMINED

IN THE

# ST. LOUIS AND THE KANSAS CITY
# COURTS OF APPEALS.

MARCH TERM, 1889.

CITY OF HANNIBAL, Appellant, v. JOSHUA P. RICHARDS, Respondent.

St. Louis Court of Appeals, March 5, 1889.

1. **Municipal Corporation:** CREATING NUISANCE: INSTRUCTION. Under a charter authority by which a city may compel a lot owner to abate a nuisance on his premises, or upon his failure to comply with an order to that effect, may abate the same itself and enforce a reimbursement of the expense by a lien on the lot, it is not competent for the city to exercise such powers in a case where the nuisance was created by its own action. An instruction that the city could not itself create a nuisance on the land of the defendant, and then require him to abate it at his own charge, was properly given.

2. **Instructions:** EXCESSIVE NUMBER. The tender of fifteen instructions, twelve of which relate to the same issue, furnishes a justification for the refusal of them all, on the ground of their number alone.

( 15 )

3. **Evidence: EXISTING NUISANCES.** The plaintiff's offer to prove that, at the time of its action in the premises, and for a long time prior thereto, gross and extensive nuisances had been maintained, and kept upon a described area within which the defendant's lots were situated, was properly refused ; it not being proposed to show distinctly that any of such nuisances existed on the defendant's lots, or were created by him. The testimony was further objectionable, on the ground that it did not tend to answer the implication that the city was, in part, at least, responsible for the existence of such nuisances, and especially for the nuisance created on the defendant's lots.

4. **Action: SEPARATE LIENS.** The plaintiff made out no case for a recovery, or for a lien on the defendant's lots, since it failed to show the amount and cost of the filling done upon each lot separately, instead of showing the aggregate amount and cost of filling done on the two lots together.

5. **Evidence: OFFICIAL MEMORANDA.** Letters and memoranda written by officers of a municipal corporation, for which there is no statutory provision making them competent evidence, are not admissible on behalf of the city, for the purpose of showing, against a third person, the amount and cost of work done in fillings on lots, either together or separately.

*Appeal from the Ralls Circuit Court.*—Hon. REUBEN F. ROY, Special Judge.

AFFIRMED.

*W. D. Anderson* and *D. H. Eby,* for the appellant.

The plaintiff was entitled to an instruction as to the conclusiveness and legal effect of the action of the city council in requiring the lots to be filled instead of drained. This question arose upon the issues and evidence in the case. Plaintiff's refused instruction number 8 should, therefore, have been given. Sess. Acts 1873, art. 8, sec. 4, p. 255 ; *Id.* art. 6, sec. 14, p. 253 ; Dillon on Mun. Corp. ( 1 Ed.) sec. 58, pp. 106, 107 ; *Baker v. City of Boston,* 12 Pick. 184 ; Dillon on Mun. Corp. ( 1 Ed.) sec. 59, pp. 1 07, 108. The Main or

Second street, mentioned in the instructions, was one of the public streets of the city of Hannibal, and as such, plaintiff had the right to fill, improve and grade it. Defendant's answer admits that the change in the channel of Bear creek was prior to the filling of said street. Sess. Acts, 1851, sec. 5, p. 327; *Id.* sec. 16, p. 333. The city was not bound to provide drainage for surface or seepage water accumulating on the abutting lots. Dillon on Mun. Corp. (1 Ed.) sec. 753, p. 709; *Id.* sec. 798, p. 770; *Id.* sec. 799, p. 770; *Id.* secs. 800, 801, p. 772; *Wilson v. Mayor*, 1 Denio, 595; *St. Louis v. Gurno*, 12 Mo. 414; *Taylor v. St. Louis*, 14 Mo. 20; *Hoffman v. St. Louis*, 15 Mo. 651; *Schattner v. Kansas City*, 53 Mo. 162; *Imler v. Springfield*, 55 Mo. 119. If the condition of which defendant complained, and upon which he based his defense, to-wit, the accumulation and retention of the waters of Bear creek upon his lots by reason of the Main street fill, did not exist at the time of the passage of plaintiff's ordinance requiring the filling of said lots, then said plea constituted no defense to plaintiff's right to recover and plaintiff's refused instruction number 12 should have been given. The question as to what was the occasion for the filling of said lots, was put in direct issue by the pleadings. Defendant introduced evidence tending to show that it was a condition brought about by the Main street fill. Plaintiff offered to prove by competent testimony, that the action of the city council was based upon a state of facts produced by an entirely different cause. This the trial court refused to allow. Defendant's instruction was erroneous in the following particulars: (1) It undertook to declare the plan upon which plaintiff should have constructed its Main street embankment. (2) It declares that it was the duty of plaintiff to have provided drainage from defendant's lots. (3) It makes

no distinction between the liability, if any, of plaintiff for surface water, and that for obstructing the waters of a running stream. Dillon on Mun. Corp. (1 Ed.) sec. 797, p. 769.

*W. M. Boulware*, for the respondent.

The refused instructions of which complaint is made are either (1) embraced as to the principle declared in instructions 1 and 2, given at plaintiff's instance, or (2) are without the limits of the issues made by the pleadings and erroneous, or (3) are in conflict with instruction number 1 given for defendant and erroneous. The principle, declared in instruction 8 to the effect that the determination by the city council, that the lots should be filled and not drained, was conclusive on defendant, is manifestly embraced in the general instructions 1 and 2 given for plaintiff. Instructions 13 and 14 were not within the issues made by the pleadings. Defendant's answer by distinct averment, as well as by its entire tenor and spirit, alleged that the accumulation and standing of water on the lots was the condition which induced the ordinance directing them to be filled. Plaintiff's reply denied specially every allegation tending to the agency of plaintiff in producing the water accumulation, but did not deny that said accumulation was the ground of the city's action. The court did not err in giving defendant's instruction number 1. (1) The instruction simply declares the principle of law that if plaintiff created and maintained the nuisance by constructing and maintaining a solid embankment whereby the escape of water from the lots was cut off, then that plaintiff could not put upon defendant the burden of its abatement. This instruction but follows the principle and pursues the mandate of the supreme court herein. (2) Plaintiff cannot complain of the giving of said instruction as error. By instructions 1 and 2 asked by plaintiff and given at

plaintiff's instance, defendant's instruction number 1 is adopted. In fact it is incorporated into and made a part of the said instructions prayed for by plaintiff. He cannot, therefore, allege error in its giving. *Duffy v. Railroad*, 19 Mo. App. 380; *Soldanels v. Railroad*, 23 Mo. App. 516; *McGonigle v. Dougherty*, 71 Mo. 259; *Holmes v. Braidwood*, 82 Mo. 610; *Thorpe v. Railroad*, 89 Mo. 650. The offer of proof made by plaintiff was properly rejected. There is no allegation that any of the surface privies or offensive deposits were on defendant's lots, nor that they were on the area by his agency or consent; they are only alleged to have been in the area embracing thirty-two lots. The city could not, because of the fact that there were offensive structures or accumulations on the lots of others, require defendant to fill up his lots or assist in the abatement. Each piece of property is chargeable with the amount expended in its filling and no more. Inasmuch as there could be no judgment over against defendant, under either count in the petition, it follows that evidence as to the aggregate amount expended in filling the two could not warrant a judgment under either count, against the lot or part of a lot therein described.

THOMPSON, J., delivered the opinion of the court.

This action was commenced in 1874 to recover of the defendant the cost of making a certain filling upon one third of lot 1, in block 14, of the city of Hannibal, and also upon lot 2 in said block, and to establish a lien upon each lot for the same. The case was before the supreme court on a former appeal and is reported in 82 Mo. 330. The petition contains two counts. The one seeks to recover the cost of making the filling on the north one-third of lot 1, and the second seeks to recover the cost of making the filling on lot 2. The establishment of a lien against each lot is prayed for. The first count of the petition sets out, among other things, that the city council of the city of Hannibal were of

the opinion that the health of the city required the filling of lot 1, block 14, and thereupon passed an ordinance ( set out in the petition ), which included the lots in controversy among many others, and required the owners of the the same to fill them with earth to the level of the roadway at the intersection of Lyon and Third streets, in accordance with a provision of the charter of the' city therein referred to. The count recites the publication of the ordinance in the "Hannibal Daily Courier," a newspaper printed and circulated in the city of Hannibal; recites the delivery of a written notice by the city marshal to the defendant, requiring him to comply with the ordinance ; recites that the defendant did not, within thirty days after the passage and publication of the ordinance, and after the service of said notice upon him, comply with it, but failed, neglected and refused to do so ; states that thereafter the city caused said lot to be filled at its own expense and at a cost named ; and concludes by a prayer for judgment against the defendant for the amount expended by the city in making the filling and .that the judgment be declared a lien upon the lot; in accordance with the applicatory charter provision. The second count pursues the same language in respect of lot 2, block 14, and concludes with a like prayer.

The defendant, in his answer, among other things, denied that the cost of the filling on lot 1 was the sum named in the petition or any sum, and that the cost of the filling on lot 2 was the sum named in the petition or any sum. The answer then sets up as a special defense a state of facts, the effect of which was that the plaintiff had, by changing the channel of Bear creek, and by raising an embankment across the channel of said creek intersecting it above and below the lots in question, created the occasion which rendered it necessary in the opinion of the city council to order the filling to be done in order to protect the health of the city. A reply

admitted that the city had raised the embankment intersecting Bear creek as stated in the answer, but denied in substance that the building of the embankment had created the nuisance, to abate which the city had ordered the filling to be done.

On the former appeal the question came before the supreme court whether the special defense thus set up, if established by the evidence, would be a good defense. On the former trial the defendant had made a distinct tender of evidence setting up a state of facts raising this defense, which evidence had been excluded, and this was the question for consideration in the supreme court. In its opinion, given by HENRY, J., the supreme court said : " Considering, as proved, the facts which the defendant offered to prove, the construction of the embankment on Second street by the city was subsequent to defendant's purchase of the lots, and that embankment prevented the flow of the water from the lots and occasioned its accumulation upon them, which, it is alleged, injuriously affected the health of the city, it has been repeatedly held by this court, that the owners of the lots, under such circumstances, could not maintain an action against the city for the damage to them, but that such injury was *damnum absque injuria*. Now we are asked to hold, also, that the city may create a nuisance upon a lot of an individual, and then have it abated at his expense if he refuse to do it when ordered. As well declare that no one can acquire any right to town or city lots, which the municipal corporation is bound to respect. The city cannot create a nuisance upon the property of a citizen and compel him to abate it." *City of Hannibal v. Richards*, 82 Mo. 336.

The principal struggle at the trial from which this appeal was taken was to show a state of facts on the part of the defendant bringing the case within the principle thus stated by the supreme court ; and on the part of the plaintiff to repel the existence of such a state

of facts. The case was submitted to the jury upon seven instructions given for the plaintiff and one given for the defendant. The first two instructions given for the plaintiff and the instruction given for the defendant submitted to the jury the question whether such a state of facts existed. The jury returned a verdict for the defendant, upon which judgment was entered, from which judgment the plaintiff prosecutes the present appeal.

The errors assigned by the city relate chiefly to the rulings of the court upon the instructions. We think it proper to observe on this subject that the city tendered no less than fifteen instructions, twelve of which related to the single issue raised on the special defense above stated. Several of these instructions were argumentative in their nature and ought not to have been given under any circumstances. But the very number of the instructions tendered would, in the opinion of the court, have been sufficient reason for refusing them altogether. Appellate courts have frequently felt called upon to condemn the practice of giving a multiplicity of instructions announcing in effect the same legal principles (*Haney v. Caldwell*, 43 Ark. 184; *Hanger v. Evins*, 38 Ark. 334; *Irgram v. State*, 62 Miss. 142; *Hamilton v. People*, 29 Mich. 173), and especially the practice of giving instructions drawn out at great length with arguments injected into them. *Merritt v. Merritt*, 20 Ill. 65, 80; *Roe v. Taylor*, 45 Ill. 485, 491; *Dunn v. People*, 109 Ill. 635. In the last case, which was a case of murder, the court gave *eleven* instructions requested by the defendant without modification, gave *twelve* others so requested, after modifying them, and refused *twenty-three*. The court held that there was no error in refusing the twenty-three by reason of their very number. In *Andrews v. Runyon*, 65 Cal. 629, 634, it was held error to refuse to give *any* instructions merely because of the number and length of those requested.

But contrary to this view, it has been held by our supreme court and by this court that where the issues are simple and few and a multitude of instructions is presented to the court, the court is justified in refusing them all by reason of their number alone. *Crawshaw v. Sumner*, 56 Mo. 517, 521 ; *Desberger v. Harrington*, 28 Mo. App. 632, 636. To require the judge, in the limited time allowed for a trial, to pass upon a great number of requests for instructions, at the peril of having any judgment reversed which may be rendered, if he makes a mistake, is an abuse which ought not to be tolerated.

But the instructions which were given placed the contested issues before the jury fully and fairly. The criticisms which have been directed against the instruction given on behalf of the defendant are not of a substantial character. The instruction was carefully framed so as to present to the minds of the jury, in brief and comprehensive language, the principal ground on which the defendant relied for a defense, established in his favor by the prior decision of the supreme court, which became the law of the case,—namely, that the city could not create a nuisance on the land of the defendant and then require him to abate it at his own charge,— or, more broadly, that the city could not itself create the *occasion* which required the filling to be done on the lots of the defendant in order to protect the public health, and then charge the defendant with the cost of doing the work.

The plaintiff made a tender of evidence thus set out in the bill of exceptions :

"Plaintiff then offered to prove by witnesses then and there present in court, to-wit : James Mineare, William R. Kelly and Joseph Hoke, and competent to testify, that immediately prior to the passage of plaintiff's said ordinance, and that for a long time prior thereto, there were and had been kept, maintained and

used in the area bounded on the north by Broadway, on the east by the Main street fill, on the south by Collier street and on the west by Third street, and being the same area in which defendant's lots were located, a large number of privies, without any vaults to the same and without means for the fecal and other matter deposited in the same to escape from said area ; that by reason of back water and high water in the Mississippi river the said offensive and unhealthy contents of said privies were deposited over said area and left there on dry ground after said river water had disappeared ; that for a long period immediately prior to the passage of said ordinance, large quantities of dead fish, offal and other decomposable animal matter had been thrown into said area, and had been by means of said river water and by means of the natural rainfall deposited, and left over said area ; and that the accumulation, if any, of the waters of Bear creek on defendant's said lots was not the sole and only cause which might have induced said city council to take action in the matter of ordering said fill.''

The court overruled this tender of evidence and the plaintiff excepted.  It should be observed that when a party makes a written tender of evidence, his counsel presumptively draws the statement in language as strong as any evidence which he has at hand, and can produce, will warrant.  Such an instrument must, therefore, wherever doubtful or ambiguous in its terms, be interpreted against the party tendering it.  Applying this principle of interpretation to the present instrument, it is clear that the court was right in overruling it, for three reasons :  (1)  It does not identify the area by reference to any plat which was put in evidence in such a manner as to make it clear what was intended.  (2) But if the jury could make out from all the evidence which had been given in the case the boundaries of the area intended—how much of the city of Hannibal it

intended to include—it would not be a good tender of evidence, for the further reason that it nowhere states that any of the fecal or offensive and unhealthy matter ever came or was deposited upon the defendant's lots. If the plaintiff had been prepared to prove that such was the fact, its failure to make such a tender of evidence cannot be ascribed to inadvertence ; for counsel for the defendant distinctly stated that the defendant objected to this line of testimony, on the ground that it did not specially apply to the defendant's two lots which were in question, and that the defendant did not object to any testimony tending to show that any objectionable structures were erected upon his lots by him. We cannot, therefore, avoid the conclusion that the plaintiff was not prepared to prove that any nuisance of the kind indicated by its tender of evidence had been created by the defendant or by his tenants upon his lots, or that any such matter had been deposited thereon by others, or had come thereon from other sources. The fact, that nuisances of the kind described may have existed in the general area of ground, in which the defendant's lots were situated, would not, of course, justify the city in requiring the defendant to raise the level of his lots. (3) It is observed that this tender of evidence concludes with the clause : " And that the accumulation, if any, of the waters of Bear creek on defendant's said lots was not the sole and only cause which might have induced said city council to take action in the matter of ordering said fill." This brings us to a third reason upon which the court was justified in refusing this tender of evidence. This last statement must be regarded as the statement of a conclusion which would follow from the testimony, as previously recited, which the plaintiff proposed to present. If a statement of facts had been established by the plaintiff justifying the jury in drawing this conclusion, it would not, in our opinion, have repelled the defense which the defendant set up, as already described, and which met with

the approval of the supreme court on the former appeal. The principle there decided was that the city of Hannibal could not create a nuisance upon defendant's ground, and then require him to abate it at his own charge.    Upon the same principle we hold that the city cannot *assist*, by its affirmative action, in creating a nuisance upon the ground of a private person, and then require him to abate it at his own charge.    It is not necessary, in our judgment, that the raising of the embankment by the city should have been the sole occasion which may have rendered the filling of the defendant's lots necessary.    If it was a substantial and efficient cause, it is plainly sufficient to bring the case within the the rule declared by the supreme court, although other causes may also have contributed.    The principle is analogous to that which is constantly applied in cases of concurrent negligence.    It is not enough that the negligence of the plaintiff should have been the sole cause of the injury, which has happened to him, to bar him from his recovery ; but it is sufficient that it was a substantial, proximate and efficient cause.    This principle is applied in the case of nuisances, so as to charge a city in an action for damages for a nuisance which it has in part created, although other efficient causes for which it was not responsible, such as the action of currents or tides prevailing in the vicinity, may have assistd in creating the nuisance.    *Hardy v. Brooklyn*, 90 N. Y. 436 ; s. c., 43 Am. Rep. 182.    We therefore conclude that the court committed no error in rejecting this tender of proof.

Aside from this, the plaintiff failed to make out its case.    The plaintiff sued in one count to recover a sum of money for making a filling of a certain height on one-third of lot 1 in block 14.    It sued in another count to recover another sum of money for making a filling of the same height upon the whole of lot 2 in the same block.    In each count it prayed for a lien, under the

provisions of the city charter and ordinance, against each lot. On a principle which is settled both in respect of special tax bills issued by municipal corporations for public work, and in respect of mechanics' liens, it was incumbent upon the city to show how much filling was done upon each lot, and it did not make out a case by showing the aggregate amount of filling done upon the two lots.

This has been often held by this court in actions upon special tax bills for street improvements. In such cases, where the work done is chargeable to property divided into contiguous lots, each lot must bear its own burden separately, even where they all belong to one person. *Miller v. Anheuser*, 4 Mo. App. 436. And a special tax bill, in which the entire cost is assessed in a lump against two contiguous lots, owned by the same defendant and under one fence, is void. *Kemper v. King*, 11 Mo. App. 584, and 11 Mo. App. 116. Such a bill will neither authorize a judgment for the whole amount, nor for a separate amount upon each lot. *Christian v. Taussig*, 8 Mo. App. 602. The same principle applies in respect of mechanics' lien, except in cases where the rule is changed by statute. *Fitzgerald v. Thomas*, 61 Mo. 512 ; *Miller v. Hoffman*, 26 Mo. App. 204. The charter provision of the city of Hannibal, which gave the city authority to order the filling in controversy in this case and make it a lien upon private property, is drawn in language which tends to affirm this rule in its application to the case now before us. It provides that "whenever, in the opinion of the city council, the health of the city requires that *any lot* shall be filled up or drained, the city council may, by ordinance, order the same to be done, and prescribe the manner and extent thereof, and if the owner of *said lot* shall refuse or fail to perform said work for the space of thirty days after being duly notified, the city engineer shall have said work done at the expense of the city,

and the city shall have a lien on *said lot*," etc. The unit of ground to which the charter provision is thus in terms applicable, and against which it gives the lien, is a *single lot*, and there is nothing in the language of the provision which indicates a purpose to allow a lien to be charged upon several lots in the aggregate, for an aggregate amount of filling done upon them collectively. The policy of the law manifestly requires' this rule, where the governing statute in terms does not otherwise provide. In modern times land has entered so largely into the exchanges of commerce that business convenience and the rights of both vendors and purchasers are best subserved by requiring that liens of this nature should be established against each unit of land according to the platted subdivisions, in order that an intending vendor may relieve from such a lien any particular lot which he may wish to sell, and that a purchaser of a single lot, who has been so unfortunate as to buy in ignorance of such a lien, may be able to unburden it by paying what has been duly charged against it, instead of being required to pay what has been charged collectively against it and other contiguous lots.

But it is contended on behalf of the plaintiff that there was substantial evidence in the case establishing the amount of filling which was done upon each of these lots. We have been referred to the deposition of Mr. Dean for such evidence, but we find no such evidence in his deposition. We have also been referred for such evidence to an alleged estimate made by Mr. Shields, who was city engineer at the time when the filling in question was done. The only evidence of this estimate which was adduced by the plaintiff consisted of two papers, which were produced by the city auditor, who testified that he found them in the vault where the city records were habitually kept. The first is in the form of a letter written by Mr. Shields, the city engineer, to Mr. Richards, the defendant, dated January 17, 1874. It

states the number of cubic yards of filling, with the price thereof and the amount chargeable therefor, which had been done upon *each lot*. The second paper is addressed to no one, but it bears the same date, is signed by Mr. Shields, the city engineer, and by Josiah Hunt, mayor, and states the aggregate amount of filling done on the two lots and the aggregate amount chargeable therefor. These papers seem to have been admitted in evidence partly on the theory that they were in the nature of public records, and partly on the theory of necessity, Mr. Shields, the city engineer, who made the estimate, having died before the date of the last trial. It is very difficult to attach the characteristics of a public record to loose scraps of paper, such as these, although they may have been deposited in the public archives. But if these papers rise to the dignity of public records, we do not know of any principle upon which they can be admitted or offered in evidence by the city for the purpose of proving an extrinsic fact in an action by the city against an individual. It might well be admissible *against* the city, as this court held with reference to a record kept by the city of St. Louis of lamps lighted, in an action against it, for the lighting of such lamps by a gas-light company. *St. Louis Gas-Light Co. v. St. Louis*, 12 Mo. App. 573. No charter provision of the city of Hannibal has been pointed out to us making such a supposed record, kept by one of the officers of the city, evidence in favor of the city to charge a third person. Various acts of the legislature of Missouri relating to corporations have made special tax-bills, made out and certified in a prescribed way, for public work done under city ordinances, *prima-facie* evidence against the owners of lots sought to be charged with liens for such work. But, in the absence of any statutory provision making an instrument of this kind evidence for such a purpose, we know of no principle upon which any probative value can be attached to

it.    Upon what theory of law can a municipal corpora-
tion be placed in this respect in a position m ore favor-
able than that which the law ac cords to private suitors?
To use an expression which we find in the record, as
falling from the lips of the learned judge who presided
at the trial, and also for counsel for the defendants,
upon what principle can the city thus be allowed to
*manufacture evidence* for itself? Of course, this expres-
sion is not used as conveying any implication whatever
against the skill or integrity of the officials of the city
of Hannibal who signed these papers. But the question
remains, upon what principle can the city prove, by the
mere fact that one of its officers made an estimate of the
amount of certain public work which had been done,
that such an amount of public w ork had been done?
Such evidence, in the absence of an enabling statute,
stands on no better footing than the accounts kept by a
private person, which in general are not evidence in his
favor.

We, therefore, conclude that, irrespective of any
other question, the city has failed to make out a case
which entitles it to recover anything under the plead-
ings.    The judgment will be accordingly affirmed.

Judge ROMBAUER concurs.    Judge BIGGS, having
been of counsel, takes no part in the decision.